IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VENIAMIN VULPE, <br> *Plaintiffs,* <br><br> v. <br><br> SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, <br> *Defendant.* | CIVIL ACTION <br> NO. 20-4709 |

**PAPPERT, J.**                                                                April 13, 2021

**MEMORANDUM**

  Veniamin Vulpe was severely injured in Suburban Station, a Philadelphia commuter railroad station, when he contacted a live electrical wire after climbing onto a parked caboose the Southeastern Pennsylvania Transportation Authority used for storage. He asserts claims against SEPTA for negligence and for a Fourteenth Amendment violation pursuant to 28 U.S.C. § 1983 under a state-created danger theory of liability. SEPTA moves to dismiss Vulpe's Complaint. The Court grants SEPTA's motion with respect to the state-created danger claim and remands his negligence claim to state court.

I

A

  On January 16, 2017, when Vulpe was 16, he climbed onto the Caboose. (Compl., ECF 1, ¶ 7.) He suffered an "electrical shock injury" after, in his words, "a high voltage electrical current was caused to come into contact with and pass through" him. (*Id.* ¶ *45.*) Vulpe then fell to the ground, suffering "permanent, devastating and life altering injuries . . . ." (*Id.* ¶¶ 46-47.) He contends SEPTA's acts were their sole cause. (*Id.* ¶ 52.)

The Caboose sat on Track 5, next to the passenger platform, inactive and inoperable since the early 1990's. (*Id.*, ¶¶ 7, 22.) Although that area of Suburban Station was not used for train service, it was accessible to SEPTA patrons, pedestrians, and others. (*See Id.* ¶¶ 8, 25, 28.) The Caboose "was not cordoned off," had "no barriers to entry," and there were no signs warning "keep off," "no entry" or "do not enter" "located at and/or near" it. (*Id.* ¶ 32.) The Caboose's exterior ladders and grab irons provided access to the catenary lines located above it. (*Id.* ¶ 29.) The catenary was "not sectionalized in order to de-energize the inactive section of railway track" and was "energized with 13,200 Volts of electricity." (*Id.* ¶¶ 25-26.)

In a March 2016 email, one SEPTA employee described the Caboose as having "been on Track 5 at Suburban Station for a long[,] long time" and asked other employees how it was used. (*Id.* ¶ 40.) He suggested if the Caboose was "not in use," he "would like to have it moved" and wrote that "[i]t is a gathering spot (on, under & around) for homeless plus someone could easily cut the padlocks to gain entry into the car." (*Id.*) Another SEPTA employee explained the Caboose was "stocked with material and . . . used from time to time . . . ." (*Id.* ¶ 43.) The first employee suggested "the potential risk [of] keeping the car here outweighs the reward," noting "[i]t's a crazy underground world here with unlimited access and that concerns me." (*Id.* ¶ 41.) Although safety concerns were raised about the Caboose's location, it remained on Track 5 and was still parked there in 2017 when Vulpe was injured. (*See id.* ¶ 43.)

B

Vulpe filed a writ of summons in the Philadelphia County Court of Common Pleas on July 21, 2020 and filed his Complaint on August 30, 2020. (Notice of Removal,

ECF 1, ¶¶ 2, 4.) SEPTA removed the case to federal court on September 25, 2020. Before this case, Vulpe voluntarily dismissed his initial lawsuit against SEPTA and the City of Philadelphia, also filed in the Common Pleas Court. (*See* Def.'s Mot., ECF 5 at 1, n.1 (citing Pa. Ct. Comm. Pleas, Phila Cnty. Case No. 170703662).) He then filed a second action in state court adding Amtrak and various other defendants. That case was also removed to federal court. (*See id.* (citing Pa. Ct. Comm. Pleas, Phila Cnty. Case No. 181201327); *see also* Civ. A. No. 19-264 (E.D. Pa.).) After Vulpe voluntarily dismissed his claims against Amtrak, that case was remanded to the Court of Common Pleas. (*See* Def.'s Mot., ECF 5 at 1, n.1; *see also* Civ. A. No. 19-264, ECF 53 (E.D. Pa. July 17, 2020).)

II

To satisfy Federal Rule of Civil Procedure 12(b)(6), Vulpe's Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When the Complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir.

3

2016) (quoting *Iqbal*, 556 U.S. at 679).  However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face."  *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted).  This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* (quoting *Connelly*, 809 F.3d at 786–87).[1]

### III

### A

Vulpe asserts a claim against SEPTA pursuant to 42 U.S.C. § 1983 for an alleged violation of his Fourteenth Amendment "substantive due process right to bodily integrity."  (Compl. ¶¶ 76, 78.)  The Constitution, however, imposes upon the State affirmative duties of care and protection with respect to its citizens only in certain limited circumstances.  *Johnson v. City of Phila.*, 975 F.3d 369, 398 (3d Cir. 2020).  In the Third Circuit, the "state-created danger" theory remains a viable mechanism for establishing a constitutional violation.  *See id.* at 399-400 ("We remain bound to faithfully apply our precedent" despite criticism of the doctrine "since it does not stem from the text of the Constitution or any other positive law . . . .")  To state a state-created danger claim, a plaintiff must plead four elements:

> First, foreseeable and fairly direct harm; second, action marked by a degree of culpability that shocks the conscience; third, a relationship with the state making the plaintiff a foreseeable victim, rather than a member of the public in general; and fourth, an affirmative use of state authority in a way that created a danger, or made others more vulnerable than had the state

---

[1] The Court considers SEPTA's motion pursuant to Rule 12(b)(6) even though Vulpe argues SEPTA's reliance on a string of emails attached to its motion "converts [its] motion to one for summary judgment pursuant to Federal Rule of Civil Procedure 56." (ECF 10 at 8.) The Court's decision relies on the allegations in Vulpe's Complaint, including the emails included in paragraphs 40 to 43, not on any emails cited by SEPTA.

4

not acted at all.

*Id.* at 400 (internal quotations and citation omitted). Where these elements are met there "could be a deprivation of liberty triggering the protections of the Due Process Clause." *Id.* at 398 (citations and internal quotations and alterations omitted). Vulpe has not pled any of these four elements, much less all of them.

1

To begin, he has not plausibly alleged a relationship with SEPTA that made him a foreseeable victim. "Where the state actor has allegedly created a danger towards the public generally, rather than an individual or group of individuals, holding a state actor liable for the injuries of foreseeable plaintiffs would expand the scope of the state-created danger theory beyond its useful and intended limits." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 913 n.12 (3d Cir. 1997.) Vulpe alleges "[t]he Caboose was openly accessible to SEPTA patrons and pedestrians such as" himself. (Compl. ¶ 8.) He asserts "he was a member of an identifiable class of persons, namely SEPTA patrons, pedestrians, users of Suburban Station, and minors, to which the Caboose was highly attractive, and who could easily step from the platform on Track 5 onto the Caboose." (*Id.* ¶ 83.) But Vulpe's allegations confirm only that he is one of an "unquantifiable and virtually unidentifiable mass of potential plaintiffs[,] . . . indistinguishable from the general population at large." *Crockett v. Southeastern Pa. Transp. Ass'n,* No. 12-4230, 2013 WL 2983117, *7 (E.D. Pa. June 14, 2013) (citation and internal quotation omitted); *aff'd on other grounds*, 591 F. App'x 65, 66 (3d Cir. 2015); s*ee also Burnette v. City of Phila.*, No. 13-0288, 2013 WL 1389753, at *6 (E.D. Pa. Apr. 5, 2013) (holding the plaintiff did not allege the "special relationship" needed for a state-created danger claim

where he "was not even a SEPTA passenger," but "was an every-day user" of a road when injured in a collision with someone exiting a SEPTA bus); *Crockett,* 2013 WL 2983117, at *7 ("SEPTA passengers are too vast in [number] to constitute a discrete class, particularly to non-immediate threats . . . .")*; Martorano v. City of Phila.* No. 09-3998, 2009 WL 3353089, at *3 (E.D. Pa. Oct. 14, 2009) (dismissing a state-created danger claim against Philadelphia for harm to the plaintiff while a passenger in a car "joy-riding" in a city park because she did not allege "a relationship between she and the state that takes her out of the general public or makes her a foreseeable victim").

On the allegations in the Complaint, countless others, whether SEPTA passengers, pedestrians, trespassers or minors, would have faced the same scenario Vulpe faced on the day of the accident. He has not "articulate[d] a reasonable basis for distinguishing himself from" these others who "faced the same [allegedly] elevated risk" from the parked Caboose either before or after its employees discussed whether it should be moved from Track 5. *Crockett*, 2013 WL 2983117, at *7. Vulpe was not "part of a discrete class" where "the risk applie[d] to thousands, or even hundreds, of people and the risk exist[ed] for an 'indefinite' [or prolonged] duration of time." *Id.* at *6.

2

Vulpe also fails to sufficiently allege SEPTA undertook the affirmative act required to impose liability for a state-created danger. "It is the misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 282 (3d. Cir. 2006). Vulpe alleges harm which resulted from things SEPTA did not do – not from things it did. SEPTA did not cordon off the Caboose or erect barriers to entry. It did not hang "Keep Off," "No Entry"

or "Do Not Enter" signs. It did not move the Caboose from where it had been parked for years. It did not remove power from the catenary over the Caboose. "[P]assive inertia, resulting in nothing being done, falls short of an affirmative act in the traditional sense." *Crockett*, 591 F. App'x at 67 (citation and internal quotation omitted). "[D]ecisions to forego remedying known hazards are not affirmative acts for purposes of state-created danger claims . . ." *Crockett*, 2013 WL 2983117, at *8.

Vulpe cites emails exchanged between SEPTA employees about the Caboose, but those communications show the "status quo" was that it had been "permanently situated in the same location since the early 1990's." (Compl. ¶ 22.) *See L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 243 (3d Cir. 2016) ("[W]e find it useful to first evaluate the setting or the 'status quo' of the environment before the alleged act or omission occurred, and then to ask whether the state actor's exercise of authority resulted in a departure from that status quo.") Vulpe's allegation that SEPTA employees "permit[ted] the Caboose to remain in its location" and his characterization of an employee's statement that "[t]he caboose needs to stay put" as a "direct[ion] that the Caboose should be caused to remain in its location on Track 5 in Suburban Station" are not sufficient to change SEPTA's inactions into action. (Compl. ¶¶ 43-44.) "[A]n alleged failure *to do something*, standing alone, cannot be the basis for a state-created danger claim." *Johnson*, 975 F.3d at 401 (emphasis in original).

3

Nor does Vulpe plausibly allege that the harm he suffered was both "foreseeable and fairly direct." *Johnson*, 975 F.3d at 400. "[I]t is insufficient to plead that state officials' actions took place somewhere along the causal chain that ultimately led to the

plaintiff's harm." *Henry v. City of Erie*, 728 F.3d 275, 285 (3d Cir. 2013). The "fairly direct" requirement means SEPTA's alleged actions (which, again, the Complaint frames as inactions and omissions) cannot be "separated from the ultimate harm by a lengthy period of time and intervening forces and actions." *Id.* at 282. Vulpe must plausibly allege SEPTA's conduct "precipitated or w[as] the catalyst for" his injuries. *Id.* at 285. Vulpe has not alleged prior incidents with similar circumstances and has not plausibly alleged that his electrocution was a "fairly direct" consequence of SEPTA's (in)actions.

4

Finally, Vulpe does not sufficiently allege conduct "so egregious, so outrageous that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998). Where, as here, the questioned judgment is "unhurried," a state actor shocks the conscience by acting with "deliberate indifference to a substantial risk of serious harm." *Johnson*, 975 F.3d at 401. Although a SEPTA employee noted the Caboose was a "gathering spot (on, under & around) for homeless" and expressed concern that individuals could "gain entry into the car" (Compl. ¶ 40), none of the communications among SEPTA employees pertain to a risk that someone would climb on the Caboose and touch a catenary and no one other than Vulpe is alleged to have done so. Vulpe's allegations are not enough to show SEPTA was deliberately indifferent to a substantial risk that someone would be electrocuted by contacting the catenary above the Caboose.

5

Whether or not a plaintiff seeks leave to amend, a district court considering a

12(b)(6) motion "must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). Amendment is futile "if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Amending Vulpe's Section 1983 state-created danger claim would be futile where, going on four years after litigation over this accident began, his allegations are not sufficient to meet any of the four elements needed to plead such a claim. (*See* Pl.'s Resp., ECF 10 at 4). *Iqbal*, 556 U.S. at 678 ("The plausiblility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully.")

B

Vulpe also claims his injuries were caused by SEPTA's negligence. (Compl. ¶¶ 54-74.) SEPTA argues it has sovereign immunity from his negligence claim under 42 Pa. Cons. Stat. § 8521. (Def.'s Mot., ECF 5 at 17.) Vulpe contends the statute's vehicle, personal property and/or real estate exceptions allow his claim to proceed. (*See* Compl. ¶¶ 56-57; *see also* 42 Pa. Cons. Stat. § 8522(b)(1) (vehicle exception); *id.* § 8522(b)(3) (personal property exception); *id.* § 8522(b)(4) (real estate exception).)

In the event of dismissal of Vulpe's federal claim, SEPTA asks the Court to "exercise its discretionary jurisdiction pursuant to 28 U.S.C. § 1367(c)(3)" and dismiss the negligence claim as well because it "has now been asserted in various forums and formulations for over three years." (ECF 5 at 2.) "A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556

U.S. 635, 639 (2009).

With the federal claim's dismissal, the Court must decline to extend supplemental jurisdiction unless considerations of judicial economy, convenience and fairness require otherwise. *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995). They don't. The state court can well consider the applicability of the state statutory exceptions to SEPTA's immunity. Under the circumstances, the Court declines to extend its jurisdiction over Vulpe's negligence claim and remands it to the Court of Common Pleas for Philadelphia County, where Vulpe has now filed three lawsuits over this accident. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988) ("[A] district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate.").

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.
